**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

JOSE LOPEZ,

      Plaintiff,

v.

UNISOURCE WORLDWIDE, INC.,

      Defendant.

No.  C 06-6290 SBA

**ORDER**

[Docket No. 27]

Before the Court is Unisource Worldwide, Inc.'s (Unisource) Motion for Summary Judgment/Summary Adjudication [Docket No. 27].  After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing.  *See* FED. R. CIV. P. 78.  For the reasons that follow, the Court grants Unisource's motion for summary judgment.

## BACKGROUND

This matter involves a claim of disability discrimination brought by plaintiff Jose Lopez against his former employer Unisource. In November 1999, Unisource hired Lopez as an hourly warehouseman at Unisource's Pleasanton warehouse.  Lopez's employment was governed by a collective bargaining agreement between Unisource and the International Longshoreman and Warehouse Union Local 6. Lopez worked as an order filler who received order forms or "books" throughout his shift directing him to pull combinations of products off warehouse shelves.  A job analysis of Lopez's warehouseman position prepared after he was injured describes the duties of the position as follows:

> The warehouse worker works 3 to 5 hours pulling orders and 3 to 5 hours operating an order picker, requiring standing and walking activities.  The worker is responsible for lifting, pulling, pushing, and carrying from 10 to 100 pounds and an average weight of 40-50 lbs., 3 to 5 hours per day.  Reaching above the shoulder is required up to 3 hours per day and below shoulder from 5 to 8 hours per day.

Remington Decl., Ex. B.

In June 2000, Lopez suffered a work related injury to his right shoulder. From June 2000 to July

2002, Lopez had two shoulder surgeries and his treating physician declared him "totally temporarily disabled." During this time Lopez was largely on a leave of absence from Unisource, but he was intermittently released to work with restrictions—from July 20, 2000 to August 3, 2000; October 16, 2000 to October 27, 2000; and March 30, 2001 to April 13, 2001. The restrictions limited Lopez's activity regarding pushing, pulling, reaching, overhead work, and lifting over three to ten pounds.

In July 2002, Lopez's physician, Dr. Alan Roth, released Lopez to work light duty with a ten-pound lifting restriction. By September 27, 2002, Dr. Roth had raised the lifting restriction to 35 pounds. Unisource claims that it accommodated Lopez's restrictions by sorting through the orders and allocating small and light orders to Lopez. Unisource also asserts that when there were no light weight orders, it would give Lopez other duties such as wrapping products, separating broken pallets from working ones, janitorial duties, and reviewing orders on the shipping dock. Lopez contends that the accommodations were not in writing and that if he received an order that was too heavy for him, he would simply call a co-worker to give him a hand. Lopez also testified that his supervisors would, at times, send him home if his restrictions were under 30 pounds. However, Lopez conceded that he was assigned to work duties other than pulling orders and that his supervisors gave him books that were consistent with his restrictions. Moreover, Lopez does not dispute Unisource's contention that he was relieved of fulfilling the normal productivity standards for the warehouseman position.

In March 2003, Dr. Roth declared Lopez "permanent and stationary." Thereafter, Lopez initiated the mutual selection of an "Agreed Medical Examiner" and, on March 7, 2003, Lopez was examined by the "AME," Dr. John Warbritton, III. Dr. Warbritton found that Lopez's right shoulder disability was permanent and prevented him from working overhead and from "forceful pushing and pulling activities at or above the shoulder level." On April 17, 2003, Dr. Warbritton issued his report of the agreed medical examination. He determined that with respect to Lopez's disability status:

> Mr. Lopez is presently permanent and stationary. With regard to the right shoulder, the patient is precluded from performing overhead work activities. Additionally, he is precluded from performing forceful pushing and pulling activities at or above the shoulder level. Additionally, the patient experiences a ratable grip strength loss on the right dominant side.

2

Svanfeldt Decl., Ex. 60.

> Dr. Warbritton therefore concluded that:
> The patient is unable to return to the full range of usual and customary job duties as a warehouse worker for Unisource. However, Mr. Lopez has been provided with appropriate job modifications, and so although the patient is a qualified injured worker, vocational rehabilitation can be deferred at the present time.

*Id.*

The Unisource Operations Manager, Darrin Grocock, concluded that the restrictions imposed by Dr. Warbritton were more severe than those imposed by Dr. Roth. Unisource then determined that it was unable to accommodate the new restrictions and, on May 5, 2003, placed Lopez on an unpaid leave of absence. According to the defendant, "Unisource was unable to continue to accommodate Plaintiff's new restrictions with temporary light duty assignments. Simply put, no reasonable accommodation would have allowed Plaintiff to perform the essential functions of his job and there were no other vacant job positions." Docket No. 28, at 7.

In response to the imposition of a leave of absence, Lopez's union filed a grievance. Grocock responded in a letter dated May 28, 2003, remarking that "Unisource does not offer permanent job modifications and light duty is only offered on a temporary basis." On April 29, 2004, a Unisource Human Resources Administrator, Katie Remington, wrote to Lopez's union stating that, "Mr. Lopez has been able to work with modified duties with the understanding that they were only temporary. However[,] once his restrictions were declared permanent we were no longer able to accommodate." Unisource concedes that it allows injured workers only one year to complete vocational rehabilitation. Lopez did not accept Unisource's offer of vocational rehabilitation, claiming that he could work full duty without accommodation. Accordingly, despite his disability, Lopez remained a Unisource employee through May 2006.

In July 2004, Unisource began to lay off warehousemen in Pleasanton because the number of customer shipments in the Pleasanton warehouse declined. Under the collective bargaining agreement, "[l]ayoff and recall shall be determined by plant seniority." Grocock Dec., ¶ 18. Prior to the first lay off, Unisource employed seventy warehousemen at the Pleasanton warehouse. By late 2006, there were thirty-five warehousemen. On May 5, 2006, Lopez was laid off. The same day, two other

3

warehousemen were laid off, one employee above Lopez in seniority and one below. From June 2006 to June 2007, an additional thirteen warehousemen were laid off due to lack of work. As of the time these motions were filed, only twenty or so warehousemen remained at the Pleasanton warehouse.

On April 3, 2006, Lopez filed a complaint against Unisource in the California Superior Court for the County of Alameda. On October 10, 2006, Unisource removed the case to federal court, invoking this Court's diversity jurisdiction. The complaint asserts two causes of action: (1) wrongful termination in violation of the California Fair Employment and Housing Act, CAL. GOV. CODE § 12940(a) (FEHA); and (2) wrongful termination in violation of California public policy.

## LEGAL STANDARDS

### 1.  Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827,

832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

**2.     California Fair Employment and Housing Act (FEHA)**

Section 12940(a) of FEHA prohibits discrimination based on an employee's physical disability. *See Green v. State*, 42 Cal. 4th 254, 262 (2007). Under FEHA, it is unlawful "[f]or an employer, because of the . . . physical disability . . . of any person, . . . to bar or to discharge the person from employment or . . . to discriminate against the person in compensation or in the terms, conditions, or privileges of employment." CAL. GOV. CODE § 12940. It is also unlawful, and separately actionable under FEHA, for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" unless the accommodation would cause "undue hardship" to the employer. CAL. GOV. CODE § 12940(m); *see also Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1222 (2006).

In evaluating disability discrimination claims under FEHA, California courts have adopted the three-step burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1042 (2005); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000); *Reid v. Google, Inc.*, 155 Cal. App. 4th 1342, 1352 (2007).

The *McDonnell Douglas* analysis imposes an initial burden on the plaintiff of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. A *prima facie* case for discrimination on grounds of physical disability under FEHA requires a plaintiff to show: (1) he suffers from a disability; (2) he could perform the essential functions of the position, with or without a reasonable accommodation; and, (3) he was subjected to adverse employment action because of his disability. *See Jenkins v. County of Riverside*, 138 Cal. App. 4th 593, 603 (2006); *Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 44 (1999).

If made out, a *prima facie* case raises an inference of discrimination, which the defendant must rebut by articulating a legitimate, non-discriminatory reason for its adverse employment action. *Guz*,

5

24 Cal. 4th at 355-56. "'[L]egitimate' reasons in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." *Id.* at 358 (internal citation omitted) (emphasis omitted).

If the employer meets this burden, the employee must then provide specific and substantial responsive evidence that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination. *See id.* at 356; *Reid*, 155 Cal. App. 4th at 1352; *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 433 n.2 (2007). An employer is "entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." *Guz,* 24 Cal. 4th at 361.

## ANALYSIS

**1.  Wrongful Termination in Violation of FEHA**

   **a.  *Prima Facie* Case**

Unisource argues that Lopez cannot establish a *prima facie* case because he was not a "qualified individual" within the meaning of FEHA. The California Supreme Court has recently clarified that FEHA, like the Americans with Disabilities Act, requires an employee to prove that he or she is a qualified individual under the statute, meaning that "the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." *See Green v. State*, 42 Cal. 4th 254, 257-58, 262 (2007). Put differently, "the FEHA and the ADA both limit their protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation." *Id.* at 264. Unisource contends that Lopez could not perform the essential duties of being a warehouseman, even with accommodation; he could perform only temporary light-duty assignments. It argues that its obligation to reasonably accommodate does not extend to transforming Lopez's temporary light-duty assignments into a full-time position that did not and does not otherwise exist. Unisource maintains that its obligation under FEHA is to provide a

1 reasonable accommodation for the warehouseman position as it is usually and customarily performed.

2 The crux of Lopez's claim is that Unisource "has a policy of not making permanent job modifications for disabled persons," which he asserts is a *per se* violation of California law. Docket No. 36, at 1-2. According to the plaintiff, "Grocock said that Unisource had a policy that employees only be temporarily assigned lighter or modified duty until they could be brought up to one hundred percent," meaning that Unisource "would not offer permanent modifications" for those employees with permanent disabilities. *Id*. at 7. Lopez maintains that he performed his job with accommodation for ten months after his right shoulder surgery and could have continued doing so if Unisource had made the modifications to his job duties permanent.

Noticeably, Lopez makes no argument that he could perform the essential functions of the warehouse position as it was usually and customarily performed, or as it was performed by other warehousemen. Instead, he maintains that he could continue to perform the job as modified by Unisource after his right should surgery—*i.e.*, modified by sorting through the orders and allocating the small and light ones to Lopez; by taking him off filling orders and assigning him to wrapping products, breaking down pallets, janitorial duties, and reviewing shipping orders; and by relieving Lopez of fulfilling the normal productivity standards for the warehouseman position.

Lopez argues that while the defendant relies on Dr. Warbritton's conclusion that he "is unable to return to the full range of usual and customary job duties as a warehouse worker for Unisource," his position is buttressed by the following sentence in Dr. Warbritton's report: "However, Mr. Lopez has been provided with appropriate job modifications, and so although the patient is a qualified injured worker, vocational rehabilitation can be deferred at the present time." The obvious import of Dr. Warbritton's conclusion, however, is that Lopez could not perform the usual and customary duties of a warehouse worker, but he could perform the job as modified to exclude physical exertions that aggravated his shoulder injury.

Unisource counters Lopez's contentions by asserting that:

> Lopez's opposition to Unisource's motion is built on the fallacy that his ability to perform the temporary, light duty job made him a qualified individual with the disability.

7

> As explained below, his qualifications must be measured against his usual warehouse job, rather than the temporary, light duty job. There is no dispute that plaintiff could not perform the essential functions of his usual job with or without accommodation, and as a matter of law, Unisource was not required to make his temporary light duty job permanent.

Docket No. 40, at 1.

Unisource's position has merit, and finds support in a California appellate court opinion directly on point. In *Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1218 (2006), the plaintiff was a police officer who suffered a knee injury, preventing him from performing essential duties of a patrol officer such as running, jumping, kneeling, and lifting. The employer police department reassigned the plaintiff to a temporary light-duty position at their front desk, a position normally reserved for civilians, or for temporary assignment for sworn police officers recovering from injuries. *Id*. at 1218-19. After being in that position for six years, the plaintiff's doctor advised that the knee injury would not improve and that the plaintiff would never be able to perform the job functions essential to patrol officers. *Id*. at 1219. The employer thereafter informed the plaintiff that it could not permanently accommodate him at the front desk without changing his status from police officer to "police technician," a position with lower benefits. *Id*.

Accordingly, the *Raines* court addressed the following question:

> Does an employer who reassigns an employee to a temporary light-duty position to accommodate the employee's injury have an affirmative obligation under the [FEHA] to make that temporary light-duty assignment available indefinitely once the employee's temporary disability becomes permanent? In addressing a similar question under the Americans with Disabilities Act (ADA), the federal circuit courts of appeal have uniformly held the duty to provide reasonable accommodation for a disabled employee does not obligate the employer to convert a temporary light-duty position into a permanent one when doing so would, in effect, create a new position. We agree with the reasoning expressed in those cases and hold the answer is no different under the accommodation requirements of FEHA.

*Id*. at 1217-18.

The *Raines* court held that "[l]ike the ADA, FEHA does not require the employer to create a new position to accommodate an employee, at least when the employer does not regularly offer such assistance to disabled employees." *Id*. at 1226. "[A]n employer has no duty (absent perhaps workplace precedent suggesting its reasonableness) to accommodate a disabled employee by making a temporary

8

accommodation permanent if doing so would require the employer to create a new position just for the employee." *Id*. at 1227 (footnote omitted).

In this case, Lopez offers no evidence that he was able to perform the duties associated with the conventional warehouse position, with or without reasonable accommodation. What Lopez argues is that he was able to perform the duties of the warehouse position as modified by eliminating a number of duties normally performed by an order filler in the Pleasanton warehouse.

Unisource is correct that it has no duty under the law to make the temporary, light-duty position permanent. Lopez is not able to perform the essential duties of the position, so he is therefore not a "qualified individual" as defined by the California Supreme Court in *Green v. State*. Lopez is thus unable to establish a *prima facie* case that he was discriminated in his employment on the basis of disability. Summary judgment on Lopez's disability claims brought pursuant to FEHA is warranted.

**b.     Unisource's Legitimate, Non-Discriminatory Reason for Lopez's Layoff**

Assuming *arguendo* that Lopez could carry his burden and a present *prima facie* case of disability discrimination, the defendant has offered a legitimate, non-discriminatory explanation, as least with respect to the ultimate decision to terminate Lopez in 2006, if not the decision to place Lopez on unpaid leave in 2003. Unisource asserts that it began to lay off warehousemen in Pleasanton because the number of customer shipments in the Pleasanton warehouse declined, thereby causing a reduction in work. Grocock Dec., ¶ 25; Johnson Dec., ¶ 3; Remington Dec., ¶ 8. It maintains that Lopez was laid off due to this reduction in work and the decision was unrelated to Lopez's shoulder injury. *Id.* In support of its proffered reason, Unisource cites the continuing reduction in the number of warehousemen employed in Pleasanton from about 70 in June 2004 to approximately 20 in November 2007. *Id.* Additionally, Unisource points out that, under the collective bargaining agreement, "[l]ayoff and recall shall be determined by plant seniority." Grocock Dec., ¶ 18; Ex. A. Unisource asserts that the warehousemen layoffs were conducted pursuant to this provision and adduces evidence to support this assertion. Specifically, on May 5, 2006, when Lopez was laid off, two other warehousemen were also laid off, one employee above Lopez in seniority and one below. Grocock Dec., ¶ 25; Johnson Dec., ¶

3; Remington Dec., ¶ 8.

A decline in business that necessitates a reduction in force may constitute a legitimate, non-discriminatory reason for adverse employment action. *See Guz*, 24 Cal. 4th at 358. Unisource has met its burden by articulating the non-discriminatory reason that there was a reduction of work in the Pleasanton warehouse and that Lopez was laid off, along with over two-thirds of the warehousemen, in accordance with the terms of a collective bargaining agreement.

### c. Evidence of Pretext

The "[i]nvocation of a right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its work force, or engaged in intentional discrimination when deciding which individual workers to retain and release." *Guz*, 24 Cal. 4th at 358. However, the burden now shifts to Lopez to show that Unisource's proffered reason is not legitimate. To meet this burden, Lopez relies almost exclusively on Unisource's "policy of not making any permanent job accommodations." Docket No. 36, at 15. In particular, Lopez argues that this "100% healed" policy constitutes a violation of California law and asserts that Unisource "followed it in this case." *Id.*

Lopez cites *McGregor v. National Railroad Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999), for the proposition that a "100% healed" policy is a *per se* violation of FEHA because it "discriminates against qualified individuals [in that it] permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation." There, the plaintiff declared that she "inquired extensively into bidding on other jobs [within the company] and that her supervisor told her that Amtrak would not accept her bid until she was '100% healthy.'" *Id.* at 1115. The Ninth Circuit held that "whether [defendant] has a '100% healed' policy or its functional equivalent is a disputed issue of material fact which makes granting summary judgment on this issue inappropriate." *Id.* at 1116.

Here, in contrast, even if Unisource had a "100% healed" policy, there is no evidence that Unisource was motivated by such a policy when it terminated Lopez's employment. Lopez points to

two instances where Unisource informed Lopez's union that he had been placed on a leave of absence because "Unisource does not offer permanent job modifications," and "once [Lopez's] restrictions were declared permanent we were no longer able to accommodate." Glusman Dec., Ex. 4, Ex 12. Additionally, Lopez cites Grocock's deposition testimony that, as a matter of company policy, Unisource does not offer even slight job modifications on a permanent basis. Opp., 14; Glusman Dec., Ex. B. However, the instances in which Unisource communicated its policy to Lopez's union occurred in May 2003 and April 2004, in response to the imposition of a leave of absence—years before Lopez was laid off. Additionally, the fact that Lopez remained a Unisource employee for over three years during which his disability was declared permanent strongly suggests that Unisource did not apply this policy to Lopez. More to the point, Lopez does not dispute that Unisource suffered an reduction in business at the Pleasanton warehouse beginning in 2004 and continuing through 2007. He does not dispute that the layoffs were conducted pursuant to the seniority provisions of the collective bargaining agreement, that Lopez was laid off at a proper time with respect to his seniority, and that the eliminated positions no longer exist. And, Lopez does not argue that Unisource engineered the downturn to expunge disabled employees from its payroll.

In light of the undisputed evidence produced by Unisource, the mere existence of a "100% healed" policy and the fact that it was communicated to Lopez's union several years prior to his dismissal do not permit a rational inference that Unisource laid Lopez off pursuant to the policy. At the most, Lopez has "created only a weak issue of fact as to whether [Unisource's] reason was untrue" and there is "abundant and uncontroverted independent evidence that no discrimination [has] occurred." *Guz,* 24 Cal. 4th at 362. Summary judgment for Unisource is appropriate under these circumstances.

**2.      Wrongful Termination in Violation of California Public Policy**

In *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 178 (1980), the California Supreme Court recognized a cause of action for wrongful termination in violation of public policy. A plaintiff may pursue such a claim if the employer terminated the plaintiff for: (1) refusing to violate a statute; (2)

11

performing a statutory obligation; (3) exercising a statutory right or privilege; or (4) reporting an alleged violation of a statute of public importance. *See Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090-91 (1992). The public policy violated must be fundamental, substantial, and well-established at the time of the discharge, and it must be rooted in some constitutional or statutory provision. *Id*. at 1090, 1095. FEHA may be a source of fundamental public policy. *See Phillips v. St. Mary Reg'l Med. Ctr*., 96 Cal. App. 4th 218, 227 (2002).

If an employer has not violated FEHA, the employee's claim for wrongful discharge in violation of public policy based on FEHA fails. *See Esberg v. Union Oil Co.*, 28 Cal. 4th 262, 272-73 (2002). Because Lopez has not established a violation of FEHA, Unisource is also entitled to summary judgment as to Lopez's claim for wrongful termination in violation of public policy.

**3.    Punitive Damages**

Lastly, Unisource asks the Court to summarily adjudicate Lopez's prayer for punitive damages. As the Court has granted Unisource's motion for summary judgment on Lopez's wrongful termination claims, this disposes of the claims asserted in Lopez's complaint. Accordingly, there is no claim upon which a prayer for relief in the form of punitive damages rests. Thus, this issue is denied as moot.

**CONCLUSION**

Accordingly, the Court GRANTS Unisource's Motion for Summary Judgment/Summary Adjudication [Docket No. 27].

IT IS SO ORDERED.

December 4, 2007

_____
Saundra Brown Armstrong
United States District Judge

12